IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY UNDERWRITERS, doing business as "THE INSTITUTES" and SEAN KEVELIGHAN,**<br>　　　　　　　　**Petitioners,**<br><br>　　　　v.<br><br>**MICHAEL BARRY,**<br>　　　　　　　　**Respondent.** | **MISCELLANEOUS ACTION**<br><br><br><br>**NO. 25-2** |

## O R D E R

**AND NOW**, this 9th day of June, 2025, upon consideration of Petitioners' Motion for Sanctions (ECF No. 11), and Respondent's response thereto (ECF No. 12), **IT IS ORDERED** that the Motion is **GRANTED IN PART, DENIED IN PART.** The Court will impose Rule 11 sanctions. Within 14 days of the date of this Order, Petitioners shall submit on the docket a revised fee petition limited to expenses specifically associated with responding to Ms. Poyerd-Loiacono's use of AI. Ms. Poyerd-Loiacono will then have 14 days from the date of Petitioner's filing of their revised fee petition to respond.

The Court finds as follows:

Do not trust until you verify. As generative artificial intelligence ("AI") continues to be an ever-growing presence in the legal profession, lawyers are failing to abide by the often-stated adage trust, *but verify.* However courts across the country are too often encountering lawyers blindly trusting the research AI generates, neglecting to verify whether the cases AI produces are cited correctly, or even exist at all. *See, e.g.*, *Bunce v. Visual Tech. Innovations, Inc.*, No. 23-1740, 2025 WL 662398 (E.D. Pa. Feb. 27, 2025) (sanctioning a defense lawyer when he cited artificial

1

cases and cases that are no longer good law using ChatGPT); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489 (D. Wyo. 2025) (sanctioning plaintiffs' attorneys for using artificial intelligence to cite to non-existent cases in a motion in limine); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (sanctioning an attorney for using ChatGPT to cite non-existent cases with fake judicial opinions and quotations); *Coomer v. Lindell*, No. 22-01129, 2025 WL 1201993 (D. Co. Apr. 23, 2025) (demanding attorneys address under oath with the potential penalty of perjury why they used artificial intelligence that created misstatements, misattributions, and misrepresentations of law).

That is precisely what happened in the present case. In this case, as all cases, the Model Rules of Professional Conduct guide attorneys' actions. As the American Bar Association stated in its first formal opinion on the use of Generative AI, "a lawyer's reliance on, or submission of, a GAI tool's output—without an appropriate degree of independent verification or review of its output—could violate the duty to provide competent representation as required by Model Rule 1.1." ABA Comm. on Ethics & Pro. Resp., Formal Op. 521 at 3-4 (2024).

I.     **Background**

The procedural history of this case is laid out in the Court's order denying Barry's Motion to Reconsider. For the sake of brevity, the Court need not repeat the entire history here. What is relevant here is that following Respondent filing his Motion to Reconsider (ECF No. 10)[1], Petitioners responded, and in their response, brought to the Court's attention several cases that were improperly cited by the Respondent and, in one instance, a case that did not exist at all. (ECF No. 11 at 7-9.) These were:

1. Attributing an invented quote to the U.S. Supreme Court from *EEOC v. Waffle House, Inc.*, 534 U.S. 279, (2002). (ECF No. 11 at 7, n.5);

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

2. Citing to *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163 (2d Cir. 2016) for the proposition regarding compelling arbitration, despite that case containing no reference to arbitration whatsoever. (ECF No. 11 at 8);

3. Citing to pages 169-170 of *Smith v. Barnesandnoble.com, LLC*, 839 F.3d 163 (2d Cir. 2016), despite the pagination of the opinion ending at page 168. (ECF No. 11 at 8, n.6.)

4. Citing to *Brady v. William Beaumont Hosp.*, 2006 WL 2789164, at *5 (S.D.N.Y. Sept. 27, 2006), a case that does not exist at all. (ECF No. 11 at 9); and

5. Citing to *Matter of Wertheim & Co. v. Halpert*, 48 N.Y.2d 681, 683 (N.Y. 1979) for the proposition that anticipatory agreements to arbitrate are unenforceable in the context of disputes involving claims of unlawful discrimination, despite the fact that that case was overturned fourteen years later in *Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623 (N.Y. 1993). (ECF No. 11 at 9.)

Petitioners observed that it was likely that Respondent's counsel had relied on AI in conducting her research, and asked the Court to investigate the issue further. (*Id.* 10-11.)

Respondent's counsel, Jeannette Poyerd-Loiacono, proactively responded, admitting that she had used AI in her research. (ECF No. 12 at 9.) Counsel, wrote that she "made an honest mistake while attempting to incorporate these new [AI] tools. I take full responsibility for my filings and fully recognize my absolute duty to ensure the accuracy and integrity of all submissions to the Court." (*Id.*) Counsel also stated that she proactively attended two continuing legal education courses on AI tools in the workplace and assured the Court that her misuse of AI was a one-time mistake. (*Id.* at 10.)

Following Ms. Poyerd-Loiacono's admission, the Court held a status conference on May 20, 2025 to discuss her use of AI with the parties. Ms. Poyerd-Loiacono repeated what she stated

in her reply brief; specifically, she admitted using AI, acknowledged that the AI tools were new to her, and informed the Court that she had discussed her use of AI with her client after she was found out by Petitioner's counsel. Petitioner's counsel then responded that they nonetheless believe Ms. Poyerd- Loiacono's actions constitute sanctionable conduct. Petitioners' counsel stated that they are seeking sanctions including disciplinary action and reimbursement of the costs and fees associated with responding to Barry's Motion to Reconsider.[2]

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 11(b)(2), by presenting to the court a written filing, an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). An attorney who fails to meet this standard may be subject to sanctions under Rule 11. See Fed. R. Civ. P. 11(c).

When assessing whether sanctions are warranted, courts consider whether an attorney's conduct was "reasonable under the circumstances . . . with reasonableness defined as an 'objective knowledge or belief at the time of the filing of a challenged paper' that the claim was well-grounded in law and fact." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991) (internal citations omitted). "Rule 11 requires only negligence, not bad faith." *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024).

---

[2] Petitioners also make the argument that Barry's Motion to Reconsider was frivolous in its entirety, and the Court should impose sanctions for filing a frivolous motion. However, the Court will not take such action; it is sufficient to deny the Motion to Reconsider on its merits and impose sanctions for Respondent's counsel's improper use of AI.

The purpose of sanctions is not to penalize an attorney, but to deter conduct. Fed. R. Civ. P. 11(c)(4). Sanctions may include "nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation." *Id.*

### III.    ANALYSIS

While the Court appreciates Ms. Poyerd-Loiacono's contrition regarding her use of AI and her taking proactive steps to address her misstep inthe use of AI, the Court has determined that sanctions are still warranted. Ms. Poyerd-Loiacono declared that the Motion to Reconsider she filed was "true and correct to the best of my knowledge, information, and belief." (ECF No. 10-2 at 3.) However, that was not the case. Attorneys are officers of the court, and are responsible for ensuring that their filings with the court contain accurate information, including legitimate cases.

The Court does not believe Ms. Poyerd-Loiacono acted in bad faith, but her conduct was negligent and violative of Rule 11. Her brief included incorrect citations with inaccurate quotations and non-existent pages; citations to case law that was overruled; and a citation to a case that does not exist at all. Despite her certification that the content of her brief was true and correct, it appears that she never verified that the citations produced by artificial intelligence were accurate, or even that they existed. Artificial intelligence, and its use for lawyers, is evolving, and much is unknown. The Court is not under the illusion that attorneys will never use AI, or that they should not. However, it remains incumbent on attorneys, perhaps more than ever, to ensure that the legal and factual claims in their filings are true and accurate.

Petitioners have asked this Court to consider numerous sanctions including monetary sanctions, referral to the Disciplinary Board of the Supreme Court of Pennsylvania, striking her

appearance in this case, and requiring that Ms. Poyerd-Loiacono inform her client of any sanctions. (ECF No. 11 at 11.) The Court believes some, though not all of these are appropriate. It is clear that Ms. Poyerd-Loiacono recognized her errors and took proactive steps to address them. Nonetheless, counsel for Petitioners had to spend time, energy, and resources researching and responding to inaccurate and nonexistent case law. Therefore, the Court shall require Ms. Poyerd-Loiacono to pay attorneys' fees in the amount Petitioners expended to respond to her use of AI.

Petitioners' counsel has submitted a log of all expenses associate with responding to the Motion to Reconsider. *See* Email from Christopher Helsel, May 22, 2025. However, as the Court has stated, it disagrees with Petitioners that the entire motion was frivolous. Therefore, the court will only grant sanctions for fees directly related to responding to the use of AI. Within 14 days, Petitioners shall submit a revised fee petition limited to those expenses. Ms. Poyerd-Loiacono will then have 14 days to respond with any objections. The Court will then issue an order on the exact amount of monetary sanctions.

In addition to monetary sanctions, Ms. Poyerd-Loiacono shall be required to inform her client Mr. Barry in writing of all sanctions imposed by the Court. *See Mata*, 678 F. Supp.3d at 466 (requiring sanctioned attorneys to notify their client of the conduct and sanctions).

### IV.     CONCLUSION

For the foregoing reasons, the Court grants in part Petitioners' motion for sanctions under Rule 11. Within 14 days, Petitioners shall submit on the docket a revised fee petition limited to expenses specifically associated with responding to Ms. Poyerd-Loiacono's use of AI. Ms. Poyerd-Loiacono will then have 14 days to respond.

BY THE COURT:


/s/ Hon. Kelley B. Hodge

_____

**HODGE, KELLEY B., J.**